UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| VITALSIGNS HOMECARE, INC. | : | CASE NO. 08-41101-JBR |
| DEBTOR | : | |

**ORDER WITH RESPECT TO THE STATUS REPORT OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES' DECISION TO TERMINATE DEBTOR'S MEDICARE PROVIDER AGREEMENT
AND
JOINT (1) MOTION BY THE TRUSTEE AND NORTH MIDDLESEX SAVINGS BANK FOR DETERMINATION OF THE APPLICABILITY OF AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR SECTION 105 INJUNCTION, AND (2) RESPONSE TO STATUS REPORT OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES' DECISION TO TERMINATE DEBTOR'S MEDICARE PROVIDER AGREEMENT**

This matter came before the Court on the Status Report of the United States Department of Health and Human Services' Decision to Terminate Debtor's Medicare Provider Agreement [docket # 109] and the Joint (1) Motion by the Trustee and North Middlesex Savings Bank for Determination of the Applicability of Automatic Stay or, In the Alternative, for Section 105 Injunction, and (2) Response to Status Report of the United States Department of Health and Human Services' Decision to Terminate Debtor's Medicare Provider Agreement [docket # 110].

On October 24, 2008 this Court approved the Chapter 7 Trustee's sale of the Debtor's Medicare Provider Number [#110] to ABC Homecare, Inc. Subject to HHS's right of recoupment.[1] The sale, however, was never consummated. At this time the Chapter 7 Trustee does not have an offer to purchase the Medicare Provider Number.

---

[1] The Memorandum of Decision accompanying the October 24, 2008 Order appears at *In re Vitalsigns Homecare, Inc.*, 396 B.R. 232 (Bankr. D. Mass. 2008).

In its Status Report, HHS does not seek any affirmative relief but informs the Court that it intends to terminate the Debtor's Medicare Provider Number but "agreed to hold the effect of the termination in abeyance, pending presentation of the to the Court in the event that the Trustee intends to object or seek relief." (Status report at 3). The Status Report also sets forth HHS's determination that the termination of the Debtor's Medicare Provider Number is not subject to the automatic stay.

The Trustee and the Bank filed their Motion and Response in which they counter HHS's arguments by alleging that HHS led the Trustee, the Bank, and ABC to believe that they and HHS were working together to consummate the sale and obtain approval of ABC as a Medicare provider. At the hearing HHS informed the Court that ABC had dropped out of the sale in August 2009 while the Bank represented that during this time there was another purchaser willing to buy the asset, although for $10,000 less than the price offered by ABC, and take the Provider Number subject to HHS's recoupment rights. The Bank represented that the U.S. Attorney's Office requested that they not pursue the second purchaser to avoid complicating the review of the ABC's proposal for quantifying the recoupment claim.[2] Whatever the dealings during this period, the parties agree that it was not until February 9, 2010 that the Center for Medicare and Medicaid Services ("CMS") sent the Trustee a letter stating its intent to terminate the Debtor's Provider Number.

At the hearing, HHS argued that the Medicare Provider Number had terminated automatically pursuant to 42 C.F.R. §489.52(b)(2) when the Debtor ceased operations, a position

---

[2]ABC had proposed to fund the filing of the final cost report so that HHS could determine the amount subject to recoupment.

2

inconsistent with that set forth in the Status Report.[3] It also alleges that the Bankruptcy Code did not stay the termination of the Medicare Provider Number as the regulation was self-effectuating. It attributed the tardiness in sending the letter notifying the Trustee of CMS's intent to terminate the Debtor's Provider Number to "bureaucratic lag time," a defense or explanation the Court finds troubling at the very least, HHS argues that its and CMS's inactivity did not prevent the automatic termination of the Provider Number.

HHS relies upon two cases as support for its new position that the Provider Number terminated by operation of law. *FAA v. Gull Air, Inc. (In re Gull Air, Inc.)*, 890 F.2d 1255 (1st Cir. 1989), is distinguishable from the instant case. Moreover HHS's own behavior belies its current stance that the regulation is self-executing. In the appropriate case, similar behavior might bar HHS from making such a dramatic change in its position. "The doctrine of equitable estoppel precludes a litigant from asserting a claim or defense which might otherwise be available to them against another party who has detrimentally altered their position in reliance upon the former's representation or failure to disclose some material fact." 33 Charles Alan Wright & Charles H. Koch, Jr., FEDERAL PRACTICE AND PROCEDURE § 8407 (2006). Courts

---

[3]As the Court noted in its prior decision,

> [HHS] apparently has no objection to extend the period of inactivity for billing under the provider number from six months to such time as it may take for ABC's approval to be completed, provided that HHS retains its ability to approve or deny ABC's application to qualify as a Medicare provider under HHS' regulations. Its objection lies solely with the Trustee's attempt to terminate what it asserts is its right to recoup overpayments to the Debtor from ABC.

*Vitalsigns,* 396 B.R. at 234 -35.

generally only apply equitable estoppel to a branch of government upon a showing of "affirmative misconduct" by the government. *Noonan v. Secretary of HHS (In re Ludlow Hospital Society, Inc.)*, 124 F.3d 22, 26 (1st Cir. 1997). In this case the parties have not provided a record upon which the Court could determine whether equitable estoppel is appropriate but nothing in *Ludlow* forecloses the application of this doctrine in the appropriate case.

Although the Status Report does not request affirmative relief, in reality HHS is seeking a comfort order that the Bankruptcy Code's automatic stay is inapplicable to the termination of the Debtor's Provider Number. The Trustee and the Bank seek either an order that the stay is in effect or an injunction barring HHS and/or CMS from terminating the Provider Number in order to give the Trustee an opportunity to sell the asset.

Leaving aside the issue that the parties are seeking declaratory and injunctive relief outside of an adversary proceeding as is required by Fed. R. Bankr. P. 7001, the Court finds that it has no jurisdiction at this point as there is no case or controversy and the dispute is not ripe for adjudication. There is no buyer and if HHS is correct that the regulation is self-executing, then the Provider Number (or more accurately the agreement pursuant to which the Provider Number issued) has long since terminated. If HHS is incorrect, either as a matter of law or by virtue of its own behavior, then it acts at its own peril. The Court cannot advise it as to how to proceed. As this Court recently explained:

> The case or controversy restriction applies to all federal actions, including declaratory judgment actions as well as to those for injunctive relief. 28 U.S.C.A. § 2201.... Determining the presence of a case or controversy can be complicated when the requested relief is in the form of a declaratory judgment action.... The difference between an abstract question and a case or controversy is one of degree, of course, and is not discernible by any precise

> test.... The basic inquiry is whether the conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.
>
> One doctrine closely related to the case or controversy prerequisite is the ripeness doctrine. The ripeness doctrine determines when a proper party may bring an action. The function of the ripeness doctrine is to prevent federal courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements....
>
> The linchpin of ripeness ... is adverseness. In a declaratory judgment action adverseness must be appraised in a practical, commonsense way. Thus, satisfying the adverseness requirement demands that the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This requirement should not be applied woodenly. Most litigation has idiosyncratic features, and the adverseness criterion invites careful calibration on a case-by-case basis. The line is often difficult to draw. While a declaratory judgment should not be granted in speculative situations, a litigant does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.

*In re NSCO, Inc.*, 2010 WL 1257975, *7-8 (Bankr. D. Mass.2010) (Internal citation and quotation marks omitted).

Even if the Court were to find there is a case or controversy that is ripe for adjudication before it, the Court could not decide the issues or grant the injunctive relief in the current procedural posture and on the record before it.

Therefore the Court takes no action with respect to HHS's Status Report and denies without prejudice the Trustee and Bank's Motion for Determination of the Applicability of Automatic Stay or, In the Alternative, for Section 105 Injunction.

Dated: April 14, 2010

                                                  Joel B. Rosenthal
                                                  United States Bankruptcy Judge